**Danville Board of School Directors v. Flora Fifield and Danville Teachers Association and Leslie Gensburg**

[315 A.2d 473]

No. 183-73

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed February 5, 1974

272

*Witters, Zuccaro & Willis,* St. Johnsbury, for Plaintiff.

*Downs, Rachlin & Martin,* St. Johnsbury, for Defendants.

**Smith, J.** Defendant, Flora Fifield, a teacher in the schools of Danville, Vermont, was notified by the Superintendent of the Danville Schools that her teaching contract would not be renewed for the school year 1973–74. The Danville Teachers Association is the bargaining unit for the teachers in Danville, of which Flora Fifield is a member. Defendant Fifield objected to such refusal to renew her contract and filed a grievance under the master contract between the Danville Board of School Directors and the Danville Teachers Association. The master agreement provides four steps in the grievance procedure, the last of which provides that disputes be submitted to binding arbitration under the rules of the American Arbitration Association. Flora Fifield, hereinafter called the defendant, and the Danville Board of School Di-

rectors, hereinafter called the plaintiff, followed the master agreement relative to the first three steps provided for grievance procedure, with the Superintendent's refusal to renew the contract of the defendant sustained in each of such three steps. Defendant then submitted her grievance to the American Arbitration Association (AAA).

The plaintiff refused to collaborate in any binding arbitration, and brought this action for a declaration of the rights and status of the parties, seeking an injunction to restrain the defendant from attempting to submit this dispute to arbitration by the American Arbitration Association.

The case was submitted to the Caledonia County Court on an agreed statement of facts. The County Court gave judgment for the defendant, declaring the plaintiff must comply with step No. 4 of the Grievance Procedure. From such judgment the plaintiff has appealed here.

The statutory authority for the contract entered into between the plaintiff Board and the Danville Teachers Association is found in 16 V.S.A. chapter 57 entitled Labor Relations for Teachers. This chapter sets up the right in teachers and administrators to select organizations to represent them in collective negotiations with school boards. Section 2004 of such chapter provides:

> The school board, either directly or through authorized representatives shall, upon request, negotiate with representatives of the recognized organizations on matters of salary, related economic conditions of employment, procedures for processing complaints and grievances relating to employment, and any mutually agreed upon matters not in conflict with the statutes and laws of the state of Vermont.

■ The plaintiff Board does not argue here that the entire master agreement between the Board and the Danville Teachers Association is void. Indeed, by proceeding through the first three steps of the arbitration agreement they have impliedly admitted the validity and binding effect of the contract between the Board and the Teachers Association, called the master contract. What the Board is saying is that by agreeing as a final step on arbitration to submit the matter of refusing a new contract to a teacher to the American Arbi-

tration Association it was committing an *ultra vires* act. This is so, argues the Board, because 16 V.S.A. § 563 gives school boards the sole power to hire and dismiss teachers, and such power cannot be delegated.

Ignored, conveniently or otherwise, by the Board is the provision set forth in the master contract between the Teachers Association and the Board in Article X, Individual Teacher Contracts, § 10.2:

> Teachers' contracts shall be renewed except for just and sufficient cause.

Section 10.7 of the same contract provides:

> Non-renewal of a teacher's contract may at the teacher's option be submitted to the grievance procedures as set forth in this agreement.

What is important in the determination of the issues before us is that the master contract granted a renewal of his or her teaching contract to a teacher under Section 10.2 of the master contract "except for just and sufficient cause." No claim has been made here, nor do we think one should be made, that the Board exceeded its legal powers in entering such an agreement with the teachers which it hired.

As we have already seen, 16 V.S.A. § 2004 states that the school board:

> shall negotiate with representatives of the recognized teacher organizations on matters of salary, related economic conditions of employment, procedures for processing complaints and grievances relating to employment, and any mutually agreed upon matter not in conflict with the statutes and laws of Vermont.

The right given teachers to have their contracts renewed was certainly an economic condition of employment, for it guaranteed to a teacher a tenure of employment, and salary, which would decidedly affect the future resources and welfare of the teacher.

We are not concerned here with 16 V.S.A. § 563 granting the power to school boards to hire and dismiss teachers. In the instant case, the plaintiff had contracted to renew the contract of the defendant teacher "except for just and sufficient cause." Such provision was part of the contract of employment as between the plaintiff Board and all teachers be-

longing to the Danville Teachers Association. Under Section 10.7 of the master contract between the plaintiff and the teachers it is stated: "Non-renewal of a teacher's contract may at the teacher's option be submitted to the grievance procedures as set forth in this agreement." The defendant teacher exercised her right under the contract to submit the matter of whether or not her contract was not renewed for good and sufficient cause to arbitration. The question presented is a contractual one, involving only the right of the plaintiff school board to enter into such an agreement, with particular emphasis on the arbitration features of the contract.

■ It would seem that the plaintiff school board does not object to arbitration procedures with the defendant teacher and her association, as such, for it has proceeded through the first three steps of the arbitration procedure provided for in the master contract with the defendant. What the plaintiff does object to is the final step of arbitration by the American Arbitration Association by which the final determination of whether the defendant teacher was refused renewal on her teaching contract "for just and sufficient cause" would be made by the AAA rather than by the school board. Such final determination, by a body other than itself, was not within its powers, is the argument of the plaintiff board.

> It is hardly necessary to say that, if the Board asserts a lack of power to agree to any particular term or condition of employment, it has the burden of demonstrating the existence of a specific statutory provision which circumscribes the exercise of such power. *Board of Education of Union Free School District No. 3 of the Town of Huntington* v. *Associated Teachers of Huntington, Inc.*, 30 N.Y.2d 122, 282 N.E.2d 109, 114 (1972).

This the plaintiff has not done.

■ Arbitration as a way of settling claims against municipalities has long been recognized by this Court. *Dix* v. *Town of Dummerston*, 19 Vt. 262 (1847); *Hollister* v. *Town of Pawlet*, 43 Vt. 425 (1871). While No. 111 of the Public Acts of 1973 is not applicable, as such, to the case at hand, it is interesting to note that such act, relating to municipal employees, and entitled Vermont Municipal Labor Relations Act,

authorizes the legislative body of a municipality and the bargaining agency of the municipal employees to submit a contract impasse to final and binding arbitration. We cite such Act merely as indicative of the trend on both judicial and legislative action to employ arbitration as an inexpensive and reasonably amicable method of conflict resolution.

Let us again emphasize that this matter is not a question of the right of a school board to hire and dismiss a teacher under the provisions of 16 V.S.A. § 563. What is involved is only the contractual rights between the parties under Title 16 Chapter 57 of the Vermont Statutes Annotated and the master agreement made between the plaintiff and the defendants, relative to arbitration.

The master contract provides as the final step in negotiation between the plaintiff Board and the teachers:

> Step 4. Arbitration. If the Association is not satisfied with the disposition of the grievance at Step 3, or the Step 3 time limits expire without the issuance of the School Board's written answer, then the Association may submit the grievance to final and binding arbitration under the voluntary Labor Arbitration Rules of the American Arbitration Association which if it agrees shall act as the administrator of the proceedings. If a demand for arbitration is not filed within thirty (30) days of the date for the Board's Step 3 reply, then the grievance will be deemed withdrawn.

■ The Danville Board of School Commissioners has failed to demonstrate the existence of a specific statutory provision which limited its authority to enter into the master contract and the arbitration provisions incorporated in it. In fact, under 16 V.S.A. § 2004, it received a legislative order to negotiate with representatives of its teachers' association. We think it reasonable to believe that the Board entered into the master contract with due deliberation and legal advice, or it would not have adopted it. It cannot now abrogate its own contract for any of the reasons that have been presented here.

*Judgment affirmed.*