### David W. Morton v. Essex Town School District

[443 A.2d 447]

No. 20-81

Present: **Barney, C.J., Billings, Hill, Underwood and Peck, JJ.**

Opinion Filed November 3, 1981

Motion for Reargument Denied March 16, 1982

*James S. Suskin,* Montpelier, for Plaintiff.

*Kolvoord, Overton & Wilson,* Essex Junction, for Defendant.

**Barney, C.J.** This case involves the dismissal of a sixth grade

science teacher from his teaching position in Essex Town. On October 28, 1977, David Morton struck one of his students in the face with the back of his hand after the student repeatedly ignored verbal warnings to stop disrupting the class. Although the student remained in the classroom with no apparent injury, by the end of the day a bruise had appeared just above and behind the eye. Neither the teacher nor the student reported the blow to school authorities, but by that evening the superintendent of schools had learned of the incident and had begun an investigation.

As a result of the investigation into the incident, David Morton was suspended from his teaching position October 31, 1977. Pursuant to 16 V.S.A. § 1752, that suspension was reviewed by the school board on November 10, 1977. The board found that Morton had violated the Essex Town school directors' policy which forbids corporal punishment, the staff handbook that prohibits corporal punishment, and 16 V.S.A. § 1161 relative to the use of corporal punishment in any Vermont public school. The board then voted unanimously to dismiss Morton effective November 14, 1977.

The record discloses no further action in this case until March 31, 1978, when David Morton filed suit in superior court, alleging that the school board did not have just cause to dismiss him, and that his dismissal, in fact, was not just. His complaint incorporated by reference the Master Agreement in effect between the Essex Town Board of School Directors and the Essex Educators' Association, which governed the terms of Morton's employment at the time he was dismissed. No further mention of the Agreement, or its relationship to the case, was made in Morton's complaint. The school board's answer admitted that the Agreement made up a portion of the terms and conditions of employment, but maintained that it was not the only controlling document, citing 16 V.S.A. § 1752(m), which provides that provisions in a teacher's contract inconsistent with the statute shall be considered of no force or effect.

The trial court found that under the Master Agreement the board was required to find "just and sufficient cause" for dismissing a teacher during the school year, and concluded that the school board's action was improper, measured against that standard. It awarded damages to the plaintiff in the amount

of $54,556, representing lost wages, lost medical benefits, and consequential business losses.

On appeal, the school board asks this Court to review the substantive validity of David Morton's discharge, alleging that the Master Agreement standard did not control its actions and that the lower court's findings were not supported by the evidence. Because we find that the Agreement controlled the actions of both parties to this case, we reverse without reaching the validity of the discharge.

■ The Master Agreement was a collectively bargained contract binding the parties who signed it to its terms. The Essex Town school directors thereby bound themselves to the contract, and, as the exclusive representative of all certified teachers in the Essex Town school district, the Educators' Association bound David Morton. In the Agreement the parties expressly provided that the contract represented a complete agreement between them, and that relations between them would be governed by the terms of the contract *only*.

■ The Master Agreement provided, at Article IV, for a grievance procedure. Section 4.1 defined a grievance:

> Any claim by the Association or a teacher that there has been a violation, misinterpretation, or misapplication of the terms of this Agreement, a violation of its or his right to fair treatment, or violation of any established policy or practice shall be a grievance.

Because David Morton claimed a violation of Article VII, § 7.3 of the Agreement, which stated that "[n]o teacher shall be dismissed during a school year . . . except for just and sufficient cause . . . ," his claim was clearly a grievance. In seeking the advantages of the protective provisions of the contract, he was required to process his claim according to its terms.

■ ■ The use of grievance procedures by teachers and their school boards, as a means of resolving disputes which arise between them in regard to the rules which govern their employment relationship, is expressly authorized by the Vermont legislature. 16 V.S.A. § 2004. This Court has recognized that most grievance and arbitration agreements are entered

into for the precise purpose of providing an alternative to judicial remedies, *Brattleboro Union High School Board* v. *Windham Southeast Education Association,* 137 Vt. 1, 3, 398 A.2d 285, 286 (1979), and grievance procedures have been referred to as the quid pro quo of collective bargaining agreements because they provide a reasonably amicable method of resolving disputes in the least expensive and most expeditious manner possible. *Danville Board of School Directors* v. *Fifield,* 132 Vt. 271, 276, 315 A.2d 473, 475 (1974).

The grievance procedure available to David Morton when he received notice of his dismissal was a four step procedure which allowed for the hearing and adjudication of his claim at increasingly higher levels of the school organization. Step 3 provided for hearing and adjudication by the entire board of school directors, and if Morton remained unsatisfied with their disposition of his grievance he could submit the claim to binding arbitration. Under the terms of the Agreement the arbitrator had full power to include in his award "such financial reimbursements or other remedies as he judges to be proper." Art. IV, § 4.2.

This Court has repeatedly supported the right of a teacher to pursue, through bargained for grievance procedures, arbitration of any claim of breach of contract in lieu of an action at law. *Bellows Falls Union High School District No. 27* v. *Rodia,* 139 Vt. 262, 428 A.2d 1094 (1981); *Brattleboro Union High School, supra; Fairchild* v. *West Rutland School District,* 135 Vt. 282, 376 A.2d 28 (1977); *Danville School Directors, supra.* Today, under this contract, we find an obligation to do so.

We find nothing in this record which indicates that David Morton ever utilized the grievance procedure available to him under his contract, or, if he did, that he exhausted its remedies. That being the case, his recovery in this case cannot stand.

*Reversed.*

### Motion for Reargument

**Per Curiam.** Appellee maintains in his Motion for Reargument that this Court has overlooked or misapprehended the

facts and law of this case. The decision was that appellee's failure to follow the grievance procedure set forth in the collective bargaining agreement which governed his employment precluded his reliance on the protective provisions of that agreement to support his claim. He argues that the record suggests that one or both parties may have intentionally or unintentionally waived this issue.

The contract at issue in this case expressly provided that it was a complete agreement between the parties, and that relations between them would be governed by its terms only. Those terms defined what was to be considered a grievance, and outlined an exclusive procedure for grievance resolution. To allow waiver under this language would be to recognize an individual contract inconsistent with the collectively bargained agreement, and this we will not do. The very purpose of a collective bargaining agreement is to supersede individual contracts with terms which reflect the strength and bargaining power and serve the welfare of the group. *J. I. Case Co.* v. *NLRB*, 321 U.S. 332, 338 (1944).

Appellee's second argument, that our decision in this case stands in direct conflict with *Alexander* v. *Gardner-Denver Co.*, 415 U.S. 36 (1974), is unfounded. That case concerned the circumstances under which an employee would be entitled to trial de novo in a court of law after prior submission of his claim to final arbitration. This is a very different question than that which was presented to us here, which was whether this employee was obligated to follow the bargained for procedure before looking to other remedies.

But in any case the decision in *Alexander* v. *Gardner-Denver Co.* was grounded in a specialized finding that Congress intended federal courts to exercise final responsibility for the enforcement of claims under Title VII of the Civil Rights Act of 1964. No such exceptional situation exists here.

The Vermont legislature, in setting forth its list of mandatory bargaining subjects for teachers and school boards, expressly included procedures for processing complaints and grievances relating to employment, 16 V.S.A. § 2004, and directed the parties to incorporate the agreed upon terms in a written agreement, 16 V.S.A. § 2005.

We find no special facts in this case which prevent us from enforcing the terms of the agreement at issue herein, nor do

we see anything in our decision which conflicts with the pronouncements of the United States Supreme Court.

*Motion for Reargument denied.*